# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
January 17, 2022

Lyle W. Cayce
Clerk

_____

No. 21-50792

_____

WHOLE WOMAN'S HEALTH, ON BEHALF OF ITSELF, ITS STAFF, PHYSICIANS, NURSES, AND PATIENTS; ALAMO CITY SURGERY CENTER, P.L.L.C., ON BEHALF OF ITSELF, ITS STAFF, PHYSICIANS, NURSES, AND PATIENTS, DOING BUSINESS AS ALAMO WOMEN'S REPRODUCTIVE SERVICES; BROOKSIDE WOMEN'S MEDICAL CENTER, P.A., ON BEHALF OF ITSELF, ITS STAFF, PHYSICIANS, NURSES, AND PATIENTS, DOING BUSINESS AS BROOKSIDE WOMEN'S HEALTH CENTER AND AUSTIN WOMEN'S HEALTH CENTER; HOUSTON WOMEN'S CLINIC, ON BEHALF OF ITSELF, ITS STAFF, PHYSICIANS, NURSES, AND PATIENTS; HOUSTON WOMEN'S REPRODUCTIVE SERVICES, ON BEHALF OF ITSELF, ITS STAFF, PHYSICIANS, NURSES, AND PATIENTS; PLANNED PARENTHOOD CENTER FOR CHOICE, ON BEHALF OF ITSELF, ITS STAFF, PHYSICIANS, NURSES, AND PATIENTS; PLANNED PARENTHOOD OF GREATER TEXAS SURGICAL HEALTH SERVICES, ON BEHALF OF ITSELF, ITS STAFF, PHYSICIANS, NURSES, AND PATIENTS; PLANNED PARENTHOOD SOUTH TEXAS SURGICAL CENTER, ON BEHALF OF ITSELF, ITS STAFF, PHYSICIANS, NURSES, AND PATIENTS; SOUTHWESTERN WOMEN'S SURGERY CENTER, ON BEHALF OF ITSELF, ITS STAFF, PHYSICIANS, NURSES, AND PATIENTS; WHOLE WOMEN'S HEALTH ALLIANCE, ON BEHALF OF ITSELF, ITS STAFF, PHYSICIANS, NURSES, AND PATIENTS; MEDICAL DOCTOR ALLISON GILBERT, ON BEHALF OF HERSELF AND HER PATIENTS; MEDICAL DOCTOR BHAVIK KUMAR, ON BEHALF OF HIMSELF AND HIS PATIENTS; THE AFIYA CENTER, ON BEHALF OF ITSELF AND ITS STAFF; FRONTERA FUND, ON BEHALF OF ITSELF AND ITS STAFF; FUND TEXAS CHOICE, ON BEHALF OF

No. 21-50792

ITSELF AND ITS STAFF; JANE'S DUE PROCESS, ON BEHALF OF ITSELF AND ITS STAFF; LILITH FUND, INCORPORATED, ON BEHALF OF ITSELF AND ITS STAFF; NORTH TEXAS EQUAL ACCESS FUND, ON BEHALF OF ITSELF AND ITS STAFF; REVEREND ERIKA FORBES; REVEREND DANIEL KANTER; MARVA SADLER,

*Plaintiffs—Appellees*,

*versus*

JUDGE AUSTIN REEVE JACKSON; PENNY CLARKSTON; MARK LEE DICKSON; STEPHEN BRINT CARLTON; KATHERINE A. THOMAS; CECILE ERWIN YOUNG; ALLISON VORDENBAUMEN BENZ; KEN PAXTON,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-cv-616

Before JONES, HIGGINSON, and DUNCAN, *Circuit Judges*.

EDITH H. JONES, *Circuit Judge*:

A Texas judge recently commenced his interlocutory opinion, which found some portions of Senate Bill 8, 87th Leg., Reg. Sess. (Tex. 2021) (codified at TEX. HEALTH & SAFETY CODE § 171.201, *et seq.*) ("S.B. 8") incompatible with the Texas Constitution, as follows: "This case is about the Texas Heartbeat Act, Senate Bill 8 . . . . *But this case is not about abortion; it is*

*about civil procedure.*"[1]  Likewise, the issues before this court are not about abortion, nor about whether S.B. 8 is consistent with the federal Constitution, nor about the wisdom of S.B. 8,[2] but about the constitutional authority of federal courts to entertain this pre-enforcement suit against a state law.[3]

We do not repeat the facts of this case, since they are sufficiently articulated in *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 530–31 (2021), and also in *Whole Woman's Health v. Jackson*, 13 F.4th 434, 438–41 (5th Cir. 2021).  On remand from the Supreme Court's grant of certiorari before judgment, the remaining defendants ("Texas Licensing Officials" or "Texas") moved for certification of the novel issues of state law at the heart of this case and for a briefing schedule regarding the two issues that Texas raised on appeal but that the Supreme Court appears to have passed on deciding.[4]  Plaintiffs oppose these motions, arguing that the Supreme Court's opinion foreclosed both of these possibilities and that the Fifth Circuit's only remaining job is to remand to the district court without further action.

---

[1] *Van Stean v. Texas Right to Life*, No. D–1–GN–21–004179, at 2 (Dist. Ct. Travis Cty., Tex., Dec. 9, 2021) (emphasis in original).  Fourteen individual suits challenging S.B. 8 were assigned to Judge David Peeples as presiding judge over the state multidistrict litigation.  *Id.* at 3.  Incidentally, the opinion also noted that "the parties" had agreed to a temporary injunction whereby "the Defendants"—Texas Right to Life, its legislative director, and anonymous Does 1–100—would not seek to enforce S.B. 8 pending litigation.  *Id.* at 2 n.2.

[2] *Cf. Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 531 (2021) ("In this preliminary posture, the ultimate merits question—whether S. B. 8 is consistent with the Federal Constitution—is not before the Court.  Nor is the wisdom of S. B. 8 as a matter of public policy.").

[3] *Whole Woman's Health*, 142 S. Ct. at 535 n.2.

[4] These two issues pertain to Plaintiffs' challenge to Section 4 of S.B. 8 on attorneys' fees and Texas's argument that Plaintiffs do not have Article III standing to sue the Texas Licensing Officials.

No. 21-50792

The Supreme Court remanded this case "for further proceedings consistent with this opinion." *Whole Woman's Health*, 142 S. Ct. at 539. Against the backdrop of ongoing state court litigation and the remand from the United States Supreme Court, this panel[5] is tasked with determining the scope of remand and the most efficient way to decide the remaining issues on appeal. For the following reasons, the court concludes that certification is a "proceeding[] consistent with [the Court's] opinion." The unresolved questions of state law must be certified to the Texas Supreme Court and further briefing will await that court's decision on certification.[6]

Our reasons for ordering certification are threefold. *First*, when holding that Plaintiffs' case against Texas Licensing Officials may proceed past the motion to dismiss stage, the Supreme Court did not conclusively determine the scope of the officials' state law duties, if any, under S.B. 8. *Second*, because the Supreme Court ordered remand in light of Texas's explicit notice that it would seek certification from the Fifth Circuit, the remand order cannot be fairly read to have foreclosed certification. *Third*, if the Texas Supreme Court accepts certification, its decision interpreting state law will be controlling, as all judges and parties agree. However, all equally understand that this court may not use a construction of Texas law to

---

[5] A motions panel of this court originally stayed the district court's order that eviscerated S.B. 8 on a number of grounds, and it expedited the case to the next available oral argument panel. *Whole Woman's Health v. Jackson*, 13 F.4th 434, 448 (5th Cir. 2021). After the Supreme Court's opinion and its subsequent remand to this court, the case was assigned to the next available oral argument panel for expedited treatment. This panel heard oral argument on Texas's after-filed motion within three weeks following receipt of the Supreme Court's mandate.

[6] The Texas Licensing Officials' alternative motion for further briefing is carried with the case until the conclusion of certification proceedings.

4

undermine the Supreme Court's decision that Plaintiffs' case survives a motion to dismiss based on allegations sufficient for *Ex Parte Young*.

We address the second reason before explaining the background for the certified questions. Following the Supreme Court's decision, Plaintiffs sought expedited issuance of the Court's mandate and prompt remand directly to the district court. Texas opposed this motion and requested remand to the court of appeals for the express purpose of "seeking certification of the controlling state-law question—namely, whether the licensing-official respondents may 'indirectly' enforce SB 8 as a matter of state law—to the Supreme Court of Texas." Only in a federal court of appeals could the parties seek certification pursuant to Texas Rule of Appellate Procedure 58.1. The Supreme Court granted Plaintiffs' motion to expedite but declined to remand directly to the district court. Instead, the Court remanded to this court "for further proceedings consistent with [its] opinion." Notably absent from this order were any instructions on how the Fifth Circuit should resolve the impending certification issue, nor were there any instructions to immediately remand to the district court.[7] The Supreme

---

[7] While generic remands are not particularly unusual for the Supreme Court, the Court could have, and often does, remand with more specific instructions in the "certiorari before judgment" posture. *See McCulloch v. Sociedad Nacional de Marineros de Honduras*, 372 U.S. 10, 22, 83 S. Ct. 671, 678 (1963) ("The judgment of the Court of Appeals . . . is vacated and the cases are remanded to that court, with instructions that it remand to the District Court for dismissal of the complaint in light of our decision."). For example, the Court has issued several orders treating applications for injunctive relief as petitions for writs of certiorari before judgment. Such orders grant the petitions, vacate the district court orders, remand to the courts of appeals "with instructions to remand to the district court for further consideration in light of" some new Supreme Court case that influences the inquiry. *See, e.g., Harvest Rock Church, Inc. v. Newsom*, 141 S. Ct. 889 (2020); *Robinson v. Murphy*, 141 S. Ct. 972 (2020); *High Plains Harvest Church v. Polis*, 141 S. Ct. 527 (2020); *Clark v. Roemer*, 501 U.S. 1246, 111 S. Ct. 2881 (1991); *see also Ross v. California*, 139 S. Ct. 2778 (2019) (same, but instructing the Ninth Circuit to analyze in the first instance rather than remanding to the district court).

No. 21-50792

Court's order did not prohibit this appellate court from ordering certification, and it placed no other explicit limitation on this court's consideration of these motions.

Judge Higginson objects to certification as untimely and because the Supreme Court, he contends, left no room in its decision for certification. Claimed untimeliness is a red herring. For the sake of obtaining speedy decisions by all three courts that have considered this case, both parties presented diametrically opposed interpretations of state law at each level. Simply comparing the district court opinion with that of the Supreme Court, however, demonstrates a significant disparity in the number and implications of state statutes referenced as to each of the four Texas Licensing Officials. Neither court definitively analyzed each of the statutes. Moreover, Texas consistently relied on S.B. 8's broad prohibition against enforcement of the law's heartbeat limit by any government official.[8] Not until the Supreme Court partially affirmed the district court did it appear that the Texas Licensing Officials must obtain a comprehensive ruling on state law by state courts. Perhaps they could have asked the Supreme Court to allow a certification post-judgment, as Plaintiffs contend, but this has nothing to do with timeliness. Either the Supreme Court might have certified, or this court can certify. The "timing" impact on this litigation is the same no matter which court undertakes to certify. And with no limit placed by the Supreme Court's remand, this court may utilize the ordinary appellate tools at our disposal to address the case—consistent with the Court's opinion.

This leads to Plaintiffs' and Judge Higginson's fundamental objection that certification "defies" the Supreme Court's opinion. After careful

---

[8] "Notwithstanding Section 171.005 or any other law, the requirements of this subchapter shall be enforced exclusively through the private civil actions described in Section 171.208." Tex. Health & Safety Code § 171.207(a).

6

analysis of the opinion, we disagree.  The Court stated: "[E]ight Justices hold this case may proceed past the motion to dismiss stage against [four licensing officials], defendants with specific disciplinary authority over medical licensees, including the petitioners." *Whole Woman's Health*, 142 S. Ct. at 539.  The Court's conclusion was supported by two four-member opinions, with Justice Thomas dissenting, leading to no majority rationale.

Justice Gorsuch's opinion, written for a plurality on this point, acknowledges uncertainty about Texas law and is laden with qualifiers about the ability of the licensing officials to enforce S.B. 8 based on their authority under Texas law.  This opinion's first statement on the subject notes, "[o]n the briefing and argument before us, it *appears* that these particular defendants fall within the scope of *Ex Parte Young*'s historic exception to state sovereign immunity.*"  Whole Woman's Health,* 142 S. Ct. at 535 (emphasis added).  Concluding that paragraph, the Court holds that plaintiffs' suit is not barred "at the motion to dismiss stage." *Id.*

In the following paragraphs, the opinion jousts with Justice Thomas's interpretation that the Licensing Defendants lack the power under state law to enforce S.B. 8, as the plurality relies on state law citations to counter those of Justice Thomas.   But again, the plurality state only that Texas law "*appears*" to impose enforcement duties on the defendants.  The conclusion of the paragraph emphasizes the tentativeness of the state law discussion in the litigation's procedural context:

> *Of course, Texas courts and not this one are the final arbiters of the meaning of state statutory directions.*  But at least *based on the limited arguments put to us* at this stage of the litigation, *it appears* that the licensing defendants do have authority to enforce S.B. 8.

*Id*. at 536 (citing *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941)) (emphasis added).[9]  The opinion's concluding reference to Plaintiffs' allegation of a credible threat of enforcement also repeats the reference to what state law "*appears*" to be, which, the Court concludes, "is enough at the motion to dismiss stage." *Id.* at 537.

Contrasting not only in style but substance, four Justices led by the Chief Justice in a partial concurrence express little doubt about the Licensing Defendants' state law authority to enforce S.B. 8. *Id.* at 544 (Roberts, C.J., concurring in part & dissenting in part).  Their conclusion consists of one sentence and lists one provision of the state occupations code. *Id.*  But that is a minority view.  No doubt because of their certainty, these Justices omit any reference to the *Pullman* doctrine's imperative of granting deference to state court interpretations of state law.

Under these circumstances, there is no controlling rationale for the Supreme Court's interpretation of state law.  All parties concerned acknowledge that due to the *Pullman* and *Erie* doctrines, the federal courts are bound by an authoritative determination of state law by the state's highest court. *Est. of Thornton v. Caldor, Inc.*, 472 U.S. 703, 709 n.8, 105 S. Ct. 2914, 2917 n.8(1985); *see also R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 499–500, 61 S. Ct. 643, 645 (1941) ("The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court.").  We, the inferior court, are bound by the governing plurality plus Justice Thomas, whose reasoning bespeaks at least uncertainty and the need to defer to state law.

---

[9] This sentiment was also repeated in Justice Thomas's partial dissent.  *Whole Woman's Health*, 142 S. Ct. at 542 n.3 (Thomas, J., concurring in part and dissenting in part) ("Because the principal opinion's errors rest on misinterpretations of Texas law, the Texas courts of course remain free to correct its mistakes.").

No. 21-50792

Finally, we note the heightened suitability of certification when federal courts anticipate invalidating a new state law on constitutional grounds. *See Bellotti v. Baird*, 428 U.S. 132, 146–47 (1976) (certification "is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication'" (citation omitted)). Justice Ginsburg once wrote for a unanimous Court:

> In litigation generally, and in constitutional litigation most prominently, courts in the United States characteristically pause to ask: Is this conflict really necessary? When anticipatory relief is sought in federal court against a state statute, respect for the place of the States in our federal system calls for close consideration of that core question . . . . [N]ormally this Court ought not to consider the Constitutionality of a state statute in the absence of a controlling interpretation of its meaning and effect by the state courts.

*Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 75, 117 S. Ct. 1055, 1072–73 (1997) (internal citations, quotation marks, and footnote omitted).[10]  Here, there is a possibility that federal courts could declare S.B. 8 constitutionally infirm even though our conclusions might be based entirely on a faulty understanding of Texas law.  To avert creating needless friction with a

---

[10] "[W]hen the outcome of a constitutional challenge turns on the proper interpretation of state law, a federal court's resolution of the constitutional question may turn out to be unnecessary.  The state courts could later interpret the state statute differently.  And the state court's different interpretation might result in a statute that implicates no constitutional question, or that renders the federal court's constitutional analysis irrelevant . . . . [C]ertification avoid[s] this risk by deferring a federal court's decision on the constitutionality of the state statute until a state court has authoritatively resolved the antecedent state-law question." *Expressions Hair Design v. Schneiderman*, 137 S. Ct. 1144, 1156 (2017) (Sotomayor, J., concurring).

No. 21-50792

coequal sovereign in our federal system, this court reasonably seeks the Texas Supreme Court's final word on the matter.

We turn to the explanation of the request for certification.

**CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS, PURSUANT TO THE TEXAS CONSTITUTION ART. 5 § 3–C AND TEXAS RULE OF APPELLATE PROCEDURE 58.1.**

**TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:**

### STYLE OF THE CASE

The style of the case is *Whole Woman's Health, et al. v. Jackson, et al.*, 21-50792.  (The full, very lengthy, case style is captioned at the top of this opinion.)  The case is on appeal from an interlocutory judgment of the United States District Court for the Western District of Texas.  Federal jurisdiction over the issues presented in this case is based on 28 U.S.C. §§ 1331, 1343.

### DISCUSSION

This suit is a pre-enforcement challenge to Senate Bill 8 ("S.B. 8"), a Texas abortion law that took effect on September 1, 2021.  S.B. 8, 87th Leg., Reg. Sess. (Tex. 2021) (codified at TEX. HEALTH & SAFETY CODE § 171.201, *et seq.*).  Plaintiffs are a group of Texas abortion providers and supporters, and the remaining defendants are agency heads tasked with supervising and overseeing various licensing boards.[11]  Initially included in this action were a

---

[11] Defendant Stephen Brint Carlton is the Executive Director of the Texas Medical Board; Defendant Katherine A. Thomas is the Executive Director of the Texas Board of

No. 21-50792

variety of other state defendants and one private defendant. The Supreme Court determined that sovereign immunity barred this suit against the other state defendants, and the private defendant was dismissed for lack of standing. *Whole Woman's Health*, 142 S. Ct. at 537, 359. The only remaining defendants are the Texas Licensing Officials.

The Supreme Court determined that "it appears that these particular defendants fall within the scope of *Ex Parte Young*'s historic exception to state sovereign immunity," *id.* at 536, and the case against them survives a motion to dismiss predicated on that theory. In reaching this conclusion, the Court had before it Plaintiffs' citations to a variety of Texas statutes and administrative rules that allegedly demonstrated the licensing official defendants' indirect authority to enforce S.B. 8 violations.[12] Based on the parties' limited representation of Texas law to the Supreme Court of the United States, the Court did not specifically construe Texas law, certainly not the swath of bare citations with which it was confronted. The Court thus surmised that Plaintiffs' interpretation was correct at a preliminary stage of the case, but took care to reserve the ultimate interpretation for Texas courts. *See id.* ("Of course, Texas courts and not this one are the final arbiters of the meaning of state statutory directions . . . . But at least based on the limited

---

Nursing; Defendant Cecile Erwin Young is the Executive Commissioner of the Texas Health and Human Services Commission; and Defendant Allison Benz is the Executive Director of the Texas Board of Pharmacy.

[12] For Defendant Carlton, Plaintiffs cite Tex. Occ. Code §§ 152.052, 164.001, 164.052, 164.053, 164.055 and 22 Tex. Admin. Code § 176.8 as sources of indirect enforcement authority. For Defendant Thomas, Plaintiffs cite Tex. Occ. Code §§ 301.101, 301.452, 301.501, 301.553 and 22 Tex. Admin. Code §§ 217.11 & 217.12. For Defendant Young, Plaintiffs cite Tex. Health & Safety Code §§ 243.011, 243.014, 243.015, 243.017, 245.012, 245.014, 245.015 and 25 Tex. Admin. Code §§ 135.4 & 139.60. For Defendant Benz, Plaintiffs cite Tex. Occ. Code §§ 553.003, 565.001, 565.002, 566.001, 566.101 & 22 Tex. Admin. Code §§ 281.7.

No. 21-50792

arguments put to us at this stage of the litigation, it appears that the licensing defendants do have authority to enforce S.B. 8." (citing *Railroad Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500, 61 S. Ct. 643 (1941))).[13]

On remand from the United States Supreme Court, we conclude that overarching questions of state law will be determinative for future proceedings in this federal suit and will materially affect the analysis of the plaintiffs' claims against each of the Licensing Defendants. Whether any of these Defendants has authority to enforce violations of S.B. 8 under relevant state law will be critical for potential issues of standing and ripeness.[14] Moreover, the definitive interpretation of the above-mentioned state statutes will bear on inquiries including (1) whether Plaintiffs' claims against any of the Licensing officials can survive a motion for summary judgment;

---

[13] Additionally, the Supreme Court dismissed the Attorney General from this suit by interpreting Tex. Occ. Code Ann. § 165.101 and holding that Texas law did not provide him with enforcement authority over S.B. 8. *Whole Woman's Health*, 142 S. Ct. at 534. The opinion notes that "the qualification 'this subtitle' limits the attorney general's enforcement authority to the Texas Occupational Code" and that the Heartbeat Act "does not fall within 'this subtitle'" nor did Plaintiffs identify any "'rule or order' . . . related to S. B. 8 that the attorney general might enforce against them." *Id.* at 534. Considering the linguistic similarity between the provision analyzed by the Court and the other provisions cited by Plaintiffs, this court welcomes the Texas Supreme Court's interpretation of that provision as well. Any answer to this question will have no impact on the present litigation. The Supreme Court dismissed the Attorney General for a second, independent reason. It wrote that even "[s]upposing the attorney general did have some enforcement authority under S.B. 8, the petitioners have identified nothing that might allow a federal court to parlay that authority, or any defendant's enforcement authority, into an injunction against any and all unnamed private persons who might seek to bring their own S. B. 8 suits." *Id.* at 535. Accordingly, the Court held that the equitable powers of federal courts do not permit them to "enjoin the world at large," and thus, the Attorney General was not a proper defendant. *Id.* (internal quotations omitted).

[14] Standing is "a jurisdictional requirement" and "Article III demands that an actual controversy persist throughout all stages of litigation." *Virginia House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1950 (2019) (internal quotations omitted).

No. 21-50792

(2) whether Plaintiffs can make a "clear showing" that any of the licensing officials can and will enforce or threaten to enforce S.B. 8, as is necessary to support injunctive relief; and (3) whether Plaintiffs can bear their burden to prove that any of the licensing officials can and will enforce or threaten to enforce S.B. 8. Because state law will be dispositive as to the position of each Licensing Official at multiple points in the future proceedings, we certify these questions for the sake of efficiency and accuracy.[15]

## CERTIFIED QUESTIONS

For the reasons discussed above, we hereby certify the following questions of state law to the Supreme Court of Texas:

> Whether Texas law authorizes the Attorney General, Texas Medical Board, the Texas Board of Nursing, the Texas Board of Pharmacy, or the Texas Health and Human Services Commission, directly or indirectly, to take disciplinary or adverse action of any sort against individuals or entities that violate the Texas Heartbeat Act, given the enforcement authority granted by various provisions of the Texas Occupations Code, the Texas Administrative Code, and the Texas Health and Safety Code and given the restrictions on public enforcement in sections 171.005, 171.207 and 171.208(a) of the Texas Health and Safety Code.

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified. The answer provided will determine the remaining issues in this case. The record in this case and copies of the parties' briefs are transmitted herewith.

---

[15] The pending state multi-district litigation making its way through the state courts, *Texas Right to Life v. Van Stean*, No. 03-21-00650-CV (Tex. Ct. App.), involves only private party defendants. It is unlikely, we anticipate, that the subject matter of the above-certified questions will be addressed in that litigation.

No. 21-50792

The panel retains cognizance of the appeal in this case pending response from the Supreme Court of Texas and hereby certifies the above questions of law.

QUESTION CERTIFIED.

No. 21-50792

Stephen A. Higginson, *Circuit Judge*, dissenting:

I respectfully disagree with the majority's decision to grant the defendants' motion to certify, for several reasons in addition to those stated in my dissent from the majority's decision to hear oral argument on this remand from the United States Supreme Court.[1]

By granting the defendants' motion, we exceed the scope of the Supreme Court's mandate. As the Supreme Court explained almost 200 years ago, issues already decided by that Court cannot be relitigated in lower federal courts such as this one:

> Whatever was before the Court, and is disposed of, is considered as finally settled. The inferior court is bound by the decree as the law of the case; and must carry it into execution, according to the mandate. They cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it upon any matter decided on appeal for error apparent; or intermeddle with it, further than to settle so much as has been remanded.

*Sibbald v. United States*, 37 U.S. 488, 492 (1838).

The Court's holding in this case was exact: "eight Justices hold this case may proceed past the motion to dismiss stage against Mr. Carlton, Ms. Thomas, Ms. Benz, and Ms. Young, defendants with specific disciplinary authority over medical licensees, including the petitioners." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 539 (2021); s*ee also id.* at 535-36 ("[W]e

---

[1] *See Whole Woman's Health v. Jackson*, No. 21-50792, Order Scheduling Oral Argument (5th Cir. Dec. 27, 2021) (Higginson, J., dissenting). Though I do not believe that this dissent appears on Westlaw or Lexis, it can be found in the appendix of a mandamus petition that the plaintiffs in this case filed in the Supreme Court which is pending. *See* Petition for a Writ of Mandamus at 6a-14a, *In re Whole Woman's Health*, No. 21-962 (U.S. Jan. 3, 2022).

hold that sovereign immunity does not bar the petitioners' suit against these named defendants at the motion to dismiss stage."). The Court based this holding on its conclusion that these defendants are "executive licensing official[s] who may or must take enforcement actions against the [plaintiffs] if they violate the terms of Texas's Health and Safety Code, including S. B. 8." *Id.* at 535 (citing Tex. Occ. Code § 164.055(a)). If this issue were to come before the Texas Supreme Court in another case, that court could of course interpret Texas law differently. *See id.* at 536 ("Texas courts and not this one are the final arbiters of the meaning of state statutory directions."). But in *this* case, *we* have authority neither to delay implementation of the Supreme Court's mandate[2] nor to reconsider the Supreme Court's holding that, because the defendant licensing officials enforce S. B. 8, the plaintiffs' lawsuit against them can proceed.

A simple hypothetical helps illustrate why we have no authority, on remand from the Supreme Court, to certify the question answered by the Supreme Court. Though the Texas Supreme Court does not, a number of state high courts accept certified questions from district courts. If a federal court of appeals were to issue an interlocutory opinion interpreting state law, on remand, a district court could not turn around and certify the issue

---

[2] The Supreme Court gave this case "extraordinary solicitude at every turn," *id.* at 538 n.6, expediting the case at each opportunity, taking the extraordinary step of granting certiorari before judgment, hearing three total hours of oral argument about whether Texas has improperly shielded from federal court review a law that openly defies a right expounded by the Supreme Court, and granting the plaintiffs' application to issue the judgment forthwith. In contrast, we have already unacceptably delayed this remand from the Supreme Court by sitting on it for one month. By certifying this question and, worse, by simultaneously carrying a motion for further briefing to us with the case, we are only causing further delay, indeed delay without specified end. *Cf. id.* at 544 (Roberts, C.J., concurring in the judgment in part and dissenting in part) ("Given the ongoing chilling effect of the state law, the District Court should resolve this litigation and enter appropriate relief without delay.").

answered rather than carry out the appellate court's holding. *See Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 184 (5th Cir. 2012) ("[A] lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of that court."). The same rule must apply to this inferior court when we receive a remand from the United States Supreme Court. Indeed, at oral argument, counsel for the defendants conceded that they could not name a single case in which the Supreme Court made an *Erie* guess on an issue of state law yet, on remand— in the very same case—the court of appeals chose to certify the question instead of following the Supreme Court's holding.

By granting the defendants' certification motion, we contravene the Supreme Court's mandate, effectively telling the Court that its opinion was advisory.

Furthermore, even if the Supreme Court's mandate did somehow allow the defendants to relitigate what they lost in the Supreme Court, this case would still be inappropriate for certification. The Supreme Court has previously denied a certification motion on the ground that the "request for certification comes very late in the day." *Minnesota Voters All. v. Mansky*, 138 S. Ct. 1876, 1891 n.7 (2018). Here, the defendants failed to request certification both when this case was before the Supreme Court and when the case was initially before this court, despite having briefed the underlying state law issue in both instances. On remand, we should not grant a certification motion that was filed only *after* the defendants argued and lost this issue in the Supreme Court. Again, counsel for the defendants acknowledged at oral argument that they know of no inferior court, ever before, seeking such intercession on remand from the Supreme Court. As the First Circuit has explained when declining to certify a question, "[w]e do not look favorably, either on trying to take two bites at the cherry by applying to the state court

after failing to persuade the federal court, or on duplicating judicial effort." *Cantwell v. Univ. of Massachusetts*, 551 F.2d 879, 880 (1st Cir. 1977).[3]

Notably, the interpretation of state law that the defendants are now urging was our own court's prior interpretation of state law, which the Supreme Court declined to adopt. *See Whole Woman's Health v. Jackson*, 13 F.4th 434, 443 (5th Cir. 2021) (per curiam) (Jones, Duncan, and Engelhardt, JJ.) (explaining that the district court's conclusion that the defendant licensing officials "have authority to 'indirectly' enforce S.B. 8 by, for example, suspending the license of a physician found to have violated S.B. 8" is "in tension with" S. B. 8's "plain language"). Rather than giving the defendants a second bite at an *Erie* guess, we must adhere to our duty and require the defendants to raise this issue in state court, where litigation over S. B. 8 is ongoing. *Cf. Nationwide Mut. Ins. Co. v. Unauthorized Prac. of L. Comm., of State Bar of Texas*, 283 F.3d 650, 656 (5th Cir. 2002) (denying a motion to certify on the grounds that the state defendants were "currently litigating this state law question in two Texas district courts").[4]

---

[3] *See also Lehman Bros. v. Schein*, 416 U.S. 386, 395 (1974) (Rehnquist, J., concurring) ("If a district court or court of appeals believes that it can resolve an issue of state law with available research materials already at hand, and makes the effort to do so, its determination should not be disturbed simply because the certification procedure existed *but was not used*.") (emphasis added).

[4] Indeed, just as the Supreme Court's principal opinion osbserved that Texas courts could disagree with the Court's interpretation of Texas law in the appropriate case, Justice Thomas's dissenting opinion urged his interpretation of Texas law directly on Texas courts rather than arguing for certification. *See Jackson*, 142 S. Ct. at 542 n.3 (Thomas, J., dissenting) ("Because the principal opinion's errors rest on misinterpretations of Texas law, the Texas courts of course remain free to correct its mistakes."). This consensus from the Justices is how comity should work, as request-and-abstention at the outset, not belatedly, allowing for overrulings from below in the very case where a party previously pressed federal courts to resolve state law *without* certification, but lost.

However, given that the majority has decided to certify this question and reopen state law issues decided by the Supreme Court—and barring that Court's intervention—I will be grateful that "the Texas Supreme Court is known for its 'speedy, organized docket.'" *Frymire Home Servs., Inc. v. Ohio Sec. Ins. Co.*, 12 F.4th 467, 472 (5th Cir. 2021) (citation omitted).[5]

Moreover, but again if we are free to set an example that fully briefed, argued and decided Supreme Court holdings can be detoured for re-litigation on remand, using certification, I will be interested not only in revisiting the state law question that the defendants lost, but also the state law question that the plaintiffs lost, which divided the United States Supreme Court more closely than the question we certified: namely, whether the Texas Attorney General has the authority to enforce S. B. 8. *Compare Jackson*, 142 S. Ct. at 534-35 (2021) (majority opinion), *with id.* at 544 (Roberts, C.J., concurring in judgement in part and dissenting in part, joined by Breyer, Sotomayor, and Kagan, JJ.).

\*     \*     \*

Relatedly, I strongly disagree with the majority's added contingency choosing to "carr[y] with the case" the defendants' "alternative motion for further briefing" to our court to raise other, allegedly remaining issues after "the conclusion of the certification process." As I stated in my dissent from the majority's decision to hear oral argument,[6] that motion is premised on there being remaining issues in this appeal for us to resolve. But no such

---

[5] For example, in the run up to the 2020 election, it resolved one important and controversial case involving absentee voting during the ongoing COVID-19 pandemic just 14 days after receiving a petition for mandamus, and a second case involving similar issues 15 days after receiving a petition for review. *See In re State*, 602 S.W.3d 549, 551 (Tex. 2020); *State v. Hollins*, 620 S.W.3d 400, 404 (Tex. 2020).

[6] *Whole Woman's Health v. Jackson*, No. 21-50792, Order Scheduling Oral Argument (5th Cir. Dec. 27, 2021) (Higginson, J., dissenting).

No. 21-50792

issues exist. Hence, here too, we usurp authority which is not ours. Because the Supreme Court "granted certiorari before judgment," it "effectively [stood] in the shoes of the Court of Appeals." *Id.* at 531. Accordingly, the Court "review[ed] the defendants' appeals challenging the District Court's order denying their motions to dismiss," ultimately holding that the "order of the District Court is affirmed in part and reversed in part." *Id.* at 531, 539. Because the Supreme Court stepped into our shoes and issued a full judgment affirming in part and reversing in part the district court's order, which had addressed all of the plaintiffs' claims—necessarily including that the parties had standing—there are no issues remaining in this appeal for us to resolve.[7] This further, second-guessing redundancy, without time limit, deepens my concern that justice delayed is justice denied, here impeding relief ordered by the Supreme Court.

\*      \*      \*

In our effort to support and defend the Constitution, it is worth remembering Judge J. Skelly Wright's simple resolve to follow Supreme Court dictates: "I did it because the Supreme Court had said it, and there wasn't any way out except subterfuge. Other judges were using subterfuge to get around the Supreme Court, delays and so on, but I grew up around federal

---

[7] Though the defendants claim that their jurisdictional objections to the fee-shifting provision in section 4 of S. B. 8 were excluded from the Supreme Court's grant of certiorari, the parties argued this point in the Supreme Court. *See* Petitioner's Br. 2–3, *Whole Woman's Health v. Jackson*, No. 21-463 (U.S. Oct. 27, 2021) (arguing that "the state executive officials named as defendants cause distinct injuries to [the plaintiffs] . . . through their ability to sue [the plaintiffs] for the collection of fees and costs under S.B. 8's draconian fee-shifting provision"); Reply Br. for Respondents Jackson et al. 7-8, *Whole Woman's Health v. Jackson*, No. 21-463 (U.S. Oct. 29, 2021) (arguing that the fact that "executive officials could seek attorney's fees as 'prevailing parties' under section 4 of SB 8" did not create an Article III injury and that plaintiffs could not pursue their section 4 claim under Ex parte Young").

courts and had respect for them, and I tried to carry on tradition."[8] Then, like now, it is undisputed that the Constitution, necessarily expounded by the Supreme Court, had been subverted by a state legislature.

Fortunately, the Supreme Court has upheld the plaintiffs' federal court constitutional challenge, remanding it to proceed at the motion to dismiss stage, even if the Court was closely divided as to whether more challenge should also proceed. Unfortunately, the defendants' response was an impermissible one, inviting us—oath-bound, like Judge Wright, to implement Supreme Court decree—to second-guess that decree, on the proposition that the repeated and explicit holding of eight Justices is only an apparent and tentative holding. In turn, accepting that invitation, the majority critiques the Supreme Court's holding as "laden with qualifiers," non-definitive, lacking "controlling rationale," and supported only by a "swath of bare citations"—all to conclude that the holding has "tentativeness" and, as an advisory opinion, is subject to reconsideration through certification and, regardless of that outcome, then will return to us, open-endedly, for further briefing, on other issues.

Let me highlight a third time that this delay and re-litigation came with frank admission by the defendants in oral argument that no inferior court, ever in United States history, has permitted a litigant who lost in the Supreme Court to get a second bite on remand, through certification, defiant of the law of the case.

At every stage of its existence, S. B. 8 and its defenders have challenged Supreme Court authority, first by deliberately nullifying a constitutional right expounded by the Court and now, when checked by that Court,

---

[8] Jack Bass, Unlikely Heroes: The Dramatic Story of the Southern Judges of the Fifth Circuit Who Translated the Supreme Court's Brown Decision into a Revolution for Equality 115 (1981) (interviewing Judge Wright).

No. 21-50792

by convincing us, an inferior federal court duty-bound to apply a Supreme Court holding, instead to question that holding.  It is this sequence which called to my mind Judge Wright's trust that the Supreme Court and its decrees will be upheld by legislatures and courts, not circumvented and enfeebled.