

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00347-CV

———————————————

TEXAS EQUAL ACCESS FUND, Appellant

V.

ASHLEY MAXWELL, Appellee

---

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 22-2100-431

---

Before Birdwell, Bassel, and Walker, JJ.
Memorandum Opinion by Justice Bassel
Concurring Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

## I. Introduction

This appeal is one skirmish among the generations-long conflicts over Texas abortion law. The skirmish that underlies this appeal is a challenge to what is known colloquially as the Texas Heartbeat Act (the Act) or Senate Bill 8 (SB 8). *See* Tex. Health & Safety Code Ann. §§ 171.201–.212. In the short time since its passage, the Act has produced a unique and complex history of litigation. Though complex, that history has not yielded what opponents of the Act, such as Appellant Texas Equal Access Fund (the Fund), seek—a resolution of their host of challenges to the Act's private civil-enforcement remedy.

Below, Appellee Ashley Maxwell filed a Rule 202 petition to take the Fund's executive director's deposition to investigate whether the Fund had violated the Act. The Fund took this as an opening to raise its challenges and responded to the Rule 202 petition with a separate suit (the Declaratory-Judgment Petition) that sought declarations to invalidate the Act and to enjoin Maxwell from filing suit under the Act. Maxwell responded by filing a motion to dismiss (the Dismissal Motion), which invoked the Texas Citizen Participation Act (TCPA) and Texas Rule of Civil Procedure 91a. The trial court frustrated the Fund's efforts by granting Maxwell's Dismissal Motion. The trial court properly dismissed the Fund's suit under Texas Rule of Civil Procedure 91a because the Fund's declaratory-judgment requests improperly preempt Maxwell's ability to decide both whether she would follow

through with a suit under the Act and where she would file, should she decide to do so. And because the trial court properly dismissed the Fund's Declaratory-Judgment Petition under Texas Rule of Civil Procedure 91a, we further hold that the trial court did not err by awarding Maxwell attorney's fees. Accordingly, we affirm.[1]

## II. Background of the Heartbeat Act, the Case, and Texas Abortion Law

### A. We set forth the general nature of the Heartbeat Act and the history of challenges to it.

In grossly oversimplified terms, the Act prohibits abortion after a fetal heartbeat is detected. To avoid pre-enforcement review of the Act by the federal courts and to address the legal environment that existed before the overruling of *Roe v. Wade*, Texas state officials are specifically not permitted to enforce its prohibition. Instead, the Act provides that "the requirements of this subchapter shall be enforced exclusively through the private civil actions described in Section 171.208." Tex. Health & Safety Code Ann. § 171.207(a). We will discuss the private civil-enforcement mechanism more fully below.

Issues regarding the Act's enforcement mechanism and whether the Act's provisions would be permitted to go into effect on its effective date of September 1, 2021, spawned litigation that traveled like lightning through the federal courts and

---

[1]In an amicus brief, the Texas Civil Justice League urges us to address the constitutional issues raised by SB 8 and pass over the procedural issues that may stand in the way of reaching those questions. We appreciate the concerns expressed by the amicus but conclude that the record in this matter makes resolution of those issues inappropriate at this time.

generated an opinion on a certified question by the Texas Supreme Court. A concise summary of that litigation's path is found in an opinion from the federal district court in which several suits challenging the Act were filed:

> In July 2021, a group of abortion service providers and advocacy organizations filed a pre-enforcement challenge, seeking injunctive relief to stop S.B. 8 from taking effect. *Whole Women's Health v. Jackson*, 556 F. Supp. 3d 595 (W.D. Tex. . . . ) [(order)], *aff'd in part, rev'd in part*[,] 595 U.S. 30, 142 S. Ct. 522 . . . (2021). Defendants filed a motion to dismiss, which this [c]ourt denied on August 25, 2021. *Id.* The Fifth Circuit then issued a temporary administrative stay of proceedings in the case. Hours before S.B. 8 took effect, Plaintiffs filed an emergency application for injunctive relief or to vacate the stay with the Supreme Court. *Whole Woman's Health v. Jackson*, 595 U.S. 30, 141 S. Ct. 2494 . . . (2021). In a brief opinion, the Supreme Court denied the emergency application, with Justices Breyer, Kagan, [and] Sotomayor[] and Chief Justice Roberts each filing a dissenting opinion. *Id.* In [his] dissent, Chief Justice Roberts noted that "[t]he statutory scheme before the Court is not only unusual, but unprecedented," because "[t]he legislature has imposed a prohibition on abortions after roughly six weeks, and then essentially delegated enforcement of that prohibition to the populace at large[]" with the "desired consequence appear[ing] to be to insulate the State from responsibility for implementing and enforcing the regulatory regime." *Id.*
>
> The Supreme Court then granted cert before judgment and, in an opinion written by Justice Gorsuch, explained its reasoning at greater length. *Whole Woman's Health . . .* , [595] U.S. [at 35–51], 142 S. Ct. [at 529–39]. The Court held that *Ex [p]arte Young* barred suit against the Attorney General [of Texas] but that Plaintiffs had sufficiently alleged the enforcement authority of Texas executive officials with disciplinary authority over medical licensees. *Id.* at [43–44, 142 S. Ct. at] 535. On remand to the Fifth Circuit, the remaining defendants moved to certify a question as to whether state officials could enforce any provision of S.B. 8. *Whole Woman's Health v. Jackson*, 23 F.4th 380 (5th Cir.[ 2022]). The Fifth Circuit granted the motion for certification. *Id.* On March 11, 2022, the Texas Supreme Court held that none of the remaining defendants could enforce S.B. 8, effectively bringing the case to a halt. *Whole Woman's Health v. Jackson*, 642 S.W.3d 569 (Tex. 2022).

4

Also during the fall of 2021 and pre-*Dobbs*, the United States filed a separate action against the State of Texas, challenging S.B. 8 as being in "open defiance of the Constitution." *United States v. Texas*, 566 F. Supp. 3d 605 (W.D. Tex. 2021) [(order)]. This [c]ourt granted the United States' motion for a preliminary injunction and denied Texas's motion to dismiss. *Id.* In a per curiam, three-sentence order, the Fifth Circuit granted a temporary stay of the case, and the Supreme Court later dismissed the writ of cert. *United States v. Texas*, No. 21-50949, 2021 WL 4706452 (5th Cir. Oct. 8, 2021) [(per curiam) (not designated for publication)] . . . .

*Fund Tex. Choice v. Paxton*, 658 F. Supp. 3d 377, 387–88 (W.D. Tex. 2023) (order).

Facing frustration from the federal courts in their challenges, opponents of the Act shifted their attacks to the forum of Texas state courts. At this juncture, the pace of the litigation slowed. None of the state-court litigation has yielded a definitive answer to the attacks on the Act.

A host of the suits filed by opponents of the Act that involved the Texas Right to Life organization were transferred to multidistrict litigation (MDL) court. *See Tex. Right to Life v. Van Stean*, No. 03-21-00650-CV, 2023 WL 3687408, at *2 (Tex. App.— Austin May 26, 2023, pet. filed) (mem. op.) (describing the procedural history of this MDL proceeding). In December 2021, the MDL court rendered an order that concluded several aspects of the Act's private civil-enforcement remedy were unconstitutional or invalid. But the order also denied a TCPA motion to dismiss filed by Texas Right to Life. *Id.* (stating that "[o]n December 9, 2021, the MDL court signed an order denying Texas Right to Life's plea to the jurisdiction and granting in part and denying in part the Planned Parenthood and Van Stean appellees' summary-

judgment motions" and further stating that "[r]elevant to this appeal, the MDL court in the same order denied Texas Right to Life's TCPA motion to dismiss").

The denial of Texas Right to Life's TCPA motion enabled it to file an interlocutory appeal challenging the MDL court's denial order but which did not include a review of the MDL court's order concluding that various aspects of the Act were unconstitutional. *Id.* at *3. The Austin Court of Appeals concluded that the MDL court had properly denied the TCPA motion to dismiss by deciding that the suit by the Act's opponents was not a response to Texas Right to Life's exercise of its TCPA-protected constitutional rights but was instead a valid exercise of the opponents' rights under the Declaratory Judgments Act to determine whether their constitutional rights were violated by the enactment of the Heartbeat Bill. *Id.* at *5. A petition for review remains pending before the Texas Supreme Court. *See generally Tex. Right to Life v. Van Stean*, No. 23-0468, *available at* https://search.txcourts.gov/Case.aspx?cn=23-0468&coa=cossup (last visited Feb. 20, 2024).

Also, a district court in Bexar County dismissed a suit by a Heartbeat Act plaintiff based on the plaintiff's lack of standing. Specifically, the district court held that a plaintiff could not bring suit under SB 8 unless he or she had suffered some actual injury resulting from the law's violation. *See Gomez v. Braid*, No. 2022CI08302 (45th Dist. Ct., Bexar County, Tex. Dec. 8, 2022). The San Antonio Court of Appeals's opinion reviewing the order dismissing the suit primarily addresses whether

6

the trial court should have provided the attorney general with notice of the underlying suit pursuant to Section 402.010(a) of the Government Code and holds that the failure to give notice was not error. *See Gomez v. Baird*, No. 04-22-00829-CV, 2024 WL 697105, at *3 (Tex. App.—San Antonio Feb. 21, 2024, no pet. h.) (mem. op.). In a footnote, the opinion also affirms the trial court's order dismissing the suit for lack of standing based on the appellant's failure to raise an issue challenging the ground of lack of standing raised by the appellee's plea to the jurisdiction. *Id.* at *3 n.4. Thus, the opinion provides no substantive analysis of the Act or challenges to it.[2]

---

[2]Litigation has not stopped in federal courts. Opponents of the Act sued Maxwell in the federal district court for the Western District of Texas. *See Davis v. Sharp*, 656 F. Supp. 3d 687 (W.D. Tex. 2023) (order). The plaintiffs in this federal suit claimed that Maxwell had violated their constitutional rights by "hav[ing] made credible threats to enforce S.B. 8 against Texas abortion funds and their associates" through actions such as Maxwell's filing of the Rule 202 petition at issue in this appeal. *Id.* at 688. Maxwell filed a declaration disavowing an intention to sue the plaintiffs in the federal suit, and the court dismissed the suit for a lack of standing. *Id.* at 690.

A suit was also filed in the federal district court for the District of Columbia by the Fund against legal counsel that had once represented Maxwell; the suit claimed that her counsel's actions in attempting to foment Heartbeat Act lawsuits violated a right to promote abortion rights. *See N. Tex. Equal Access Fund v. Am. First Legal Found.*, Civ. Action No. 22-0728 (ABJ), 2023 WL 7002675 (D.D.C. Oct. 24, 2023) (mem. op.). That suit was dismissed on the basis that the plaintiffs lacked standing to prosecute their claims. *Id.* at *10.

Another federal suit "concerns several Texas abortion advocacy groups that seek to fund or support abortion[s] for Texans in states where it remains legal" and was initially brought against the Attorney General of Texas and certain Austin-area district attorneys. *See Fund Tex. Choice v. Deski*, No. 1:22-CV-859-RP, 2023 WL 8856052, at *1 (W.D. Tex. Dec. 21, 2023) (order). The plaintiffs sought a preliminary injunction, and the federal court resolved that request as follows:

**B.** **We set forth the litigation that generated this appeal and the course of the proceedings below.**

To force an answer to their challenges to the Act, the opponents of the Act also turned to the proceeding below and a declaratory-judgment action filed in another county that is addressed in a separate appeal to this court[3] in an attempt to create a forum for their challenges to the Act.

---

> The [c]ourt issued its order on Plaintiffs' motion for a preliminary injunction and Paxton's motion to dismiss on February 24, 2023. In its order, the [c]ourt found that Paxton could only enforce Texas's abortion restrictions through H.B. 1280 (also known as the "Trigger Ban"). 2021 Tex. Sess. Law Serv. ch. 800 (H.B. 1280), Sec. 3 (West); Tex. Health & Safety Code [Ann.] § 170A.001, et seq. However, it found that H.B. 1280 does not regulate out-of-state abortions, and therefore, Paxton would have no authority to prosecute Plaintiffs for funding or assisting out-of-state abortions. Accordingly, the [c]ourt granted Paxton's motion to dismiss.
>
> As to the Austin[-]area prosecutors, the [c]ourt determined that they did have enforcement power under the pre-*Roe* laws. Moreover, the [c]ourt ruled that the language of the pre-*Roe* laws could be arguably interpreted to cover out-of-state abortions, meaning that Plaintiffs could viably claim a genuine threat of prosecution from the Austin[-]area prosecutors. The [c]ourt found that it was bound by the Fifth Circuit's holding in *McCorvey v. Hill*, 385 F.3d 846 (5th Cir. 2004), which held that the pre-*Roe* laws had been repealed by implication. Accordingly, it preliminarily enjoined the Austin[-]area prosecutors from enforcing the pre-*Roe* laws against Plaintiffs. [Docket citations omitted.]

*Id.* at *3. These plaintiffs joined Maxwell in the suit, and the federal court recently denied her objection to joinder in that suit and to venue. *Id.* at *9–13.

[3] *See Weldon v. Lilith Fund for Reproductive Equity*, No. 02-22-00413-CV, *available at* https://search.txcourts.gov/Case.aspx?cn=02-22-00413-CV&coa=coa02 (last visited Feb. 20, 2024).

The foundation of this appeal has its genesis from a sworn declaration filed by Kamyon Conner, the executive director of the Fund in the MDL proceedings described above. The declaration stated that during the period of the short-lived injunction issued by the federal district court in *United States v. Texas*, the Fund had engaged in conduct prohibited by the Act. Conner's declaration stated,

> Since September 1, 2021 [the effective date of the Heartbeat Act], [the] Fund has engaged in conduct with the intent to assist pregnant Texans [in] obtain[ing] abortions after the detection of cardiac activity. Specifically, following the entry of an injunction by the Honorable Robert Pitman on October 6, 2021, and while that injunction was still in place, [the] Fund paid for at least one abortion after confirming the gestational age of the fetus was beyond the time when cardiac activity is usually detected. In doing so, it was [the] Fund's intention to pay for the abortion even if cardiac activity was detected.

The statements in the declaration prompted action by Maxwell. In Denton County—the county where the Fund's executive director claimed in her declaration that she resided—Maxwell sought a pre-suit deposition of Conner under Texas Rule of Civil Procedure 202 through the filing of a "Verified Petition to Take Deposition to Investigate a Lawsuit" (hereinafter 202 Proceeding). The 202 Proceeding's petition stated the purpose of the discovery that Maxwell sought was

> to investigate the possibilities for future civil actions brought under [S]ection 171.208 of the Texas Health and Safety Code[] against individuals and organizations that performed or aided or abetted abortions in violation of the Texas Heartbeat Act, also known as Senate Bill 8 or SB 8. In her capacity as executive director of the North Texas Equal Access Fund ([the] Fund[]), Kamyon Conner has stated in a sworn declaration that her organization knowingly and intentionally aided or

9

abetted at least one post-heartbeat abortion in violation of the Texas Heartbeat Act.[4]

The Fund's immediate response to the 202 Proceeding was the filing of its Declaratory-Judgment Petition, a separate lawsuit against Maxwell that was initiated by its original petition, request for declaratory judgment, and application for temporary injunction and anti-suit injunction. Relying on statements made by Maxwell and the counsel that represented her at that time, the Fund stated that the basis for its suit was as follows:

> Maxwell's Rule 202 [p]etition is even more chilling than the direct threats that have given rise to previous SB8 litigation. [Maxwell's] Rule 202 [p]etition demonstrates that [she] intends to sue [the] Fund (and others)[] and is seeking information about exactly how broad that suit should be. [Maxwell] necessarily presumes that SB8 is a valid exercise of government authority, while [the] Fund believes that SB8 is unconstitutional and void. A court's intervention is necessary to resolve that disagreement. And [Maxwell's] present, imminent threat of enforcement of the unconstitutional law against [the] Fund is a separate, independent demonstration of the concrete injury [the] Fund will suffer unless it is provided declaratory relief against [Maxwell] and [she] is enjoined from any attempts to sue [the] Fund (and to obtain discovery from it, or from Ms. Conner, its [e]xecutive [d]irector, by these means).

---

[4]The trial court has deferred a ruling on the Rule 202 petition, stating at a hearing on Maxwell's Dismissal Motion that

> I will postpone any decision on Rule 202. I think it needs to be a separate hearing. And I will abate that to decide the scope of a deposition that would be permitted in the event that the [Second] Court [of Appeals] comes back and agrees with me as opposed to reverses me. So we can decide that at that time.

The Declaratory-Judgment Petition noted the existence of the MDL proceeding (which remains pending and subject to appeal) and the MDL court's previous order, which concluded that many aspects of the Act were invalid.

The Fund's Declaratory-Judgment Petition raised its own host of constitutional objections to the private civil-enforcement remedy and other aspects of the Act; those objections were predicated on (1) the right to free speech, (2) the right to open courts, (3) due-process rights, (4) the prohibition of retroactive statutes, (5) lack of standing by Heartbeat Act plaintiffs, (6) separation of powers, and (7) vagueness. The Declaratory-Judgment Petition relied on the Act's alleged constitutional infirmities to support a declaration "[t]hat any claims asserted by . . . Maxwell under any provision of SB8 declared to be invalid are invalid and frivolous as a matter of law and have no basis in law." It continued that Maxwell should be enjoined because the Fund would suffer irreparable harm if "Maxwell is not enjoined from organizing and planning to bring lawsuits against it and others like [Conner] who speak about and provide funds to organizations that help people access abortions and other reproductive health services."

The day after the filing of its Declaratory-Judgment Petition, the Fund filed a "Notice of Transfer of Tag-Along Case to Multidistrict Pretrial Court" stating that its suit was deemed transferred to the MDL court that had previously found the Act constitutionally infirm. The attempt to transfer the case was ineffectual. The MDL court subsequently ordered a remand of both Maxwell's 202 Proceeding and the

11

Fund's Declaratory-Judgment Petition to the Denton County District Court in which they were filed, and the order noted that

> [t]he panel consciously intended to limit the kinds of cases that may be tagged into this pretrial court: *First* there must be the quoted [*Texas Right to Life*] *connection*, and *second* there must be an *enforcement case*. A Rule 202 petition does not qualify as an enforcement case. Rule 202 allows pre-suit *investigation* for "anticipated" and "potential" lawsuits. Such investigations often do result in lawsuits that seek to *enforce* a legal duty. But a Rule 202 investigation does not by itself go that far and therefore is not within the specified limits of the panel's order, which speaks of cases "enforcing" SB 8.

The record also contains a later "Notice to Court of Filing of Motion to Transfer Under Rule 13, Rules of Judicial Administration" by which the Fund sought to expand the scope of the MDL proceeding and to stay proceedings initiated by its Declaratory-Judgment Petition "and related cases." The record contains no indication of any action taken by the MDL court on this filing.

As the sparring continued over moving the litigation to the MDL court, Maxwell filed her Dismissal Motion under the TCPA and Rule 91a and plea in abatement. The Dismissal Motion offered Maxwell's views of the current state of Texas abortion law. The Dismissal Motion then invoked the TCPA and claimed that the Declaratory-Judgment Petition was a response to Maxwell's exercise of various rights protected by the TCPA, including her rights to free speech, to petition, and of association. In what was apparently an effort to preempt the Fund's claim that it could offer prima facie proof of the invalidity of the Act's private civil-enforcement

12

remedy, the Dismissal Motion challenged each of the grounds attacking the Act that were raised by the Fund in its Declaratory-Judgment Petition.

Maxwell's Dismissal Motion also invoked Texas Rule of Civil Procedure 91a and attacked the Declaratory-Judgment Petition because it was an effort (1) to raise matters already put at issue by the filing of Maxwell's 202 petition, (2) to deprive Maxwell of her right to select the timing and venue of a suit brought under the Act, and (3) to interfere with a previously filed suit that required the declaratory-judgment proceeding to be abated. Because the Declaratory-Judgment Petition was subject to dismissal, Maxwell also asserted that the Fund was not entitled to an anti-suit injunction.

Maxwell attached her own declaration to the Dismissal Motion. That declaration stated how tentative her decision was to bring a Heartbeat Act suit because abortion law was in a state of flux pending the determination whether the United States Supreme Court would overrule *Roe* in the *Dobbs* case. Maxwell stated,

> 4. I have filed a Rule 202 petition that seeks to depose Kamyon Conner, the executive director of the North Texas Equal Access Fund, who has admitted in a sworn declaration that the North Texas Equal Access Fund has paid for "at least one" post-heartbeat abortion in October of 2021, in violation of Senate Bill 8.
>
> 5. I am attempting to discover information about this violation of SB 8, as well as information about the North Texas Equal Access Fund's employees, volunteers, and donors—all of whom could be held liable under SB 8 or prosecuted under [A]rticle 4512.2 of the Revised Civil Statutes.

13

6. I have not yet decided whether to file a private civil-enforcement lawsuit under SB 8 against the North Texas Equal Access Fund[] or its employees, volunteers, and donors.

7. I do not wish to sue under SB 8 at this time because the Supreme Court has not yet overruled *Roe v. Wade*, 410 U.S. 113 (1973). I want to wait and see what the Supreme Court says in *Dobbs v. Jackson Women's Health Organization*, No. 19-1392, before deciding whether to follow through with an SB 8 enforcement lawsuit.

8. I have also not yet decided the venue in which I will sue, in the event that I decide to sue the North Texas Equal Access Fund, or any of its employees, volunteers, and donors, under SB 8's private civil-enforcement mechanism.

9. I will decide whether and where and whom to sue under SB 8 in consultation with my attorneys after *Dobbs* is announced and after we take discovery from the North Texas Equal Access Fund in the Rule 202 proceedings.

Maxwell's declaration triggered the Fund to file a motion for discovery under the TCPA in an effort to depose her. In the Fund's view,

[a]t the time her declaration was filed, . . . Maxwell testified that she had no present intention to enforce SB8 because she wanted to see what happened with the *Dobbs v. Jackson Women's Health Organization* case. . . . Maxwell cites to this testimony to support the argument in her [Dismissal] Motion . . . that because she has not yet decided to file a lawsuit under SB8, [the] Fund cannot preemptively seek a declaration that such a suit would be improper, void, and unconstitutional. . . . Maxwell's current intention to sue and her immediate plans in the wake of *Dobbs*, which she herself relies [upon] in support of her [Dismissal] Motion . . . , are fact questions on which [the] Fund must be entitled to examine her in order to respond to the argument she herself makes in her [Dismissal] Motion . . . . [Citations to the Dismissal Motion omitted.]

Maxwell responded that the Fund did not need a deposition for the trial court to decide that the filing of the Fund's Declaratory-Judgment Petition violated the rule

14

in *Abor v. Black*, holding that a declaratory-judgment action cannot be used to deprive a plaintiff of the right to decide the time and place of filing certain suits. 695 S.W.2d 564 (Tex. 1985) (orig. proceeding), *abrogated on other grounds by In re Prudential Ins. Co.*, 148 S.W.3d 124 (Tex. 2004) (orig. proceeding). The response noted that

> Maxwell's argument does not in any way hinge on whether she has decided to file suit against the . . . Fund. The problem with the . . . Fund's lawsuit—and the reason it violates *Abor v. Black*—is that it deprives . . . Maxwell of the ability to decide *when* and *where* she will litigate these issues against the . . . Fund, in the event that she decides to sue at all. This argument holds regardless of whether . . . Maxwell has already decided to sue the . . . Fund, has decided not to sue the . . . Fund, or is still considering whether to do so.

After a non-evidentiary hearing, the trial court denied the Fund's discovery motion.

After denial of its request for discovery, the Fund made the attempt to expand the scope of the MDL proceeding that we have referenced previously and responded to Maxwell's Dismissal Motion. To justify the filing of the Declaratory-Judgment Petition in response to Maxwell's 202 Proceeding, the Fund's response summarized Maxwell's actions and those of the counsel who had at one time represented her:

> As alleged in the [Fund's Declaratory-Judgment Petition], and [as] confirmed by additional evidence attached to this [r]esponse, [Maxwell] is among those private citizens deputized under SB8 to bring lawsuits. Prior to the filing of [the] Fund's [p]etition, [Maxwell] made clear that she intended to enforce the law against [the] Fund, its staff, its volunteers, its donors, and anyone else she perceived to be violating SB8. [Maxwell] has not forsworn bringing a lawsuit under SB8, and her Rule 202 petition specifically indicates that is what she is seeking information to do. [Maxwell]'s counsel has publicly stated unequivocally that [Maxwell] intends to file lawsuits under SB8. As a self-identified SB8 enforcer who is investigating the possibility of filing an SB8 lawsuit or

15

lawsuits of her own, [Maxwell] is particularly interested in any judicial determination about the validity of SB8. [Exhibit references omitted.]

With this preface in place, the response raised the following arguments:

- The TCPA did not protect Maxwell from the Fund's suit.

- If the TCPA did apply, the Fund asserted that it had met its burdens to avoid dismissal under either the TCPA or Texas Rule of Civil Procedure 91a. The Fund's specific arguments were as follows:

  o There was a controversy supporting the Fund's declaratory-judgment suit because Maxwell "believes SB8 is constitutional and valid and that she will use its civil[-]enforcement provisions to punish [the] Fund" and because there were the ripening seeds of a controversy by virtue of Maxwell's belief that SB 8 was constitutional and the Fund's view that it was not (with that view supported by the MDL court).

  o A temporary injunction was warranted based on the Fund's probable right of recovery formed by the MDL court's view of the unconstitutionality of the Act's private civil remedy and the harm that the Fund would suffer if Maxwell went forward with a suit under the Act.

  o An anti-suit injunction was warranted to protect the Fund and its staff, volunteers, and donors from vexatious litigation.

  o The Fund then outlined the host of constitutional infirmities that it contended were present in the private civil-remedy provisions of the Act.

- The Fund then argued that its constitutional claims could not be litigated as part of Maxwell's 202 Proceeding, arguing that

  > [Maxwell']s 202 [Proceeding] does not afford [the] Fund the opportunity to obtain relief against the threat [Maxwell] has repeatedly posed. Resisting a Rule 202 [p]etition does not and cannot provide the same relief as sought in this lawsuit to protect [the] Fund's constitutional rights to be

16

> free from the threat of repeated civil suits used to enforce Texas law.

- The Fund next argued that Maxwell's Rule 202 petition was mooted because litigation was then occurring between the parties due to the filing of the Fund's Declaratory-Judgment Petition.

- In response to Maxwell's assertion that the Fund's suit was a preemptive strike that deprived her of the right to choose the time and place of the filing of her suit, should she decide to file one, the Fund argued that the *Abor* case relied on by Maxwell did not apply outside a tort context and that the Fund should not be delayed in its ability to challenge the civil-enforcement provision of the Act.

- The Fund dismissed Maxwell's argument that the Declaratory-Judgment Petition should be abated by arguing that the 202 Proceeding could not be considered as establishing dominant jurisdiction because both it and the Fund's Declaratory-Judgment Petition were filed in the same court. Nor, in the Fund's view, was a Rule 202 proceeding a suit on the merits that could establish dominant jurisdiction.

- Finally, the Fund argued that it should be awarded its attorney's fees and costs.

Maxwell filed a reply to the Fund's response that in many ways reiterated the arguments made in her original Dismissal Motion. She began by arguing that the MDL court's order was of no legal effect and that it was the responsibility of the trial judge who was going to hear the Fund's Declaratory-Judgment Petition to decide the constitutionality of the Act's private civil-enforcement remedy. She challenged the Fund's arguments that the TCPA did not apply. Her reply also challenged the premise of the Fund's response that the 202 Proceeding was not a forum in which the constitutionality of the private civil-enforcement remedy of the Act could be raised

17

and that the filing of the Fund's Declaratory-Judgment Petition mooted the 202 Proceeding.

The reply then pivoted to the argument that the Fund's Declaratory-Judgment Petition improperly deprived Maxwell of her right to select the time and place of the filing of her claims. Maxwell challenged the Fund's contentions that its suit should not be abated in favor of the 202 Proceeding. Maxwell also challenged the Fund's request for an anti-suit injunction by asking how a suit could be vexatious when the Fund had admitted that it had violated Texas law, and even if Maxwell could not sue, an anti-suit injunction would have no efficacy because other private plaintiffs could file an action under the Act and a prosecutor could file criminal charges. Maxwell concluded her rebuttal of the Fund's response by contending that the constitutional challenges raised by the Fund were meritless. She ended her reply by seeking her own award of attorney's fees.

The trial court conducted another non-evidentiary hearing on Maxwell's Dismissal Motion. Though the trial court stated on the record its belief that the private civil-remedy provisions of the Act were constitutional, the trial court granted in general terms Maxwell's Dismissal Motion under the TCPA and Texas Rule of Civil Procedure 91a. The trial court also concluded that Maxwell was entitled to recover her attorney's fees under the TCPA and Rule 91a.7. The trial court subsequently signed an order awarding Maxwell $35,165.26 in fees in accordance with a Rule 11 agreement signed by the parties; the parties stipulated to the sum but not the propriety

18

of the fee award. In response to a motion to modify, correct, or reform the judgment, the trial court later signed another order clarifying both the date that it had signed the order awarding Maxwell a specific sum of fees and the date that the clerk had entered the order. The Fund filed a motion for new trial that was overruled by operation of law and also filed a notice of appeal and an amended notice of appeal.

## C. We explain the changing landscape of Texas abortion law.

Obviously, the litigation below coincided with a sea change in abortion law. The United States Supreme Court overruled *Roe* in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215, 142 S. Ct. 2228 (2022). Within weeks of the trial court's signing its order of dismissal in this case, statutes imposing specific criminal and civil penalties on those who perform abortions in Texas became effective under what is known colloquially as the Trigger Ban—a ban that took effect after the overruling of *Roe*. *See* Act of May 25, 2021, 87th Leg., R.S., ch. 800, § 3, 2021 Tex. Gen. Laws 1886, 1887 (H.B. 1280) (codified at Tex. Health & Safety Code § 170A); *see also* Tex. Health & Safety Code Ann. § 170A.002(a)–(b); *Fund Tex. Choice*, 658 F. Supp. 3d at 385. The performance of an abortion became at least a second-degree felony and was made subject to a civil-penalty provision that can be enforced by the Texas Attorney General. *See* Tex. Health & Safety Code Ann. §§ 170A.004, .005. Not unexpectedly, more recent appeals addressing abortion have dealt with statutory provisions that prohibit abortion rather than the Act. *See In re State*, No. 23-0994, 2023 WL 8540008, at *1–3 (Tex. Dec. 11, 2023) (orig. proceeding) (addressing the medical-necessity

19

exception to the abortion prohibition in Texas Health and Safety Code Section 170A.002(b)(2)); *Texas v. Zurawski*, No. 23-0629, *available at* https://search.txcourts.gov/Case.aspx?cn=23-0629&coa=cossup (last visited Feb. 20, 2024) (appeal of temporary injunction dealing with the medical-necessity exceptions in Health and Safety Code Chapter 170A and the Act).

However, this change in the law does not repeal the Act's civil-enforcement provisions. The chapter of the Health and Safety Code containing the new criminal and civil penalties also provides that "[t]he fact that conduct is subject to a civil or criminal penalty under this chapter does not abolish or impair any remedy for the conduct that is available in a civil suit." Tex. Health & Safety Code Ann. § 170A.006.[5]

## III. A Detailed Explanation of the Heartbeat Act

The Act prohibits conduct and then provides a remedy to penalize those who engage in that conduct. It is a unique freestanding scheme that defines the legal duty created by the Act, outlines the remedy available to enforce the Act, carefully describes enforcement and defenses to the Act, and has a unique venue provision integrated into it. As context for why we conclude that the Act should accord

---

[5] Further, Texas officials have expressed the view that the pre-*Roe* statutory scheme prohibiting abortion in Texas was never repealed and that *Dobbs* revitalized it. *See Fund Tex. Choice*, 658 F. Supp. 3d at 386–87. But that conclusion is another area of controversy. Relying on a Fifth Circuit opinion, the federal district court for the Western District of Texas made a preliminary conclusion that the pre-*Roe* scheme was repealed by implication. *Id.* at 411–12 (citing *McCorvey*, 385 F.3d at 849).

Maxwell the autonomy to decided when and if she will file suit under the Act, we detail the Act's unique statutory scheme.

### A.     We set forth the conduct that is prohibited by the Heartbeat Act.

The Act establishes a preliminary determination that a physician must make before performing an abortion:  "a physician may not knowingly perform or induce an abortion on a pregnant woman unless the physician has determined, in accordance with this section, whether the woman's unborn child has a detectable fetal heartbeat." *Id.* § 171.203(b).  In turn, "a physician may not knowingly perform or induce an abortion on a pregnant woman if the physician detected a fetal heartbeat for the unborn child as required by Section 171.203 or failed to perform a test to detect a fetal heartbeat." *Id.* § 171.204(a).

A physician is freed from the strictures of the Act only "if a physician believes a medical emergency exists that prevents compliance with" the Act. *Id.* § 171.205(a). The Act also imposes recordkeeping requirements on a physician to document the performance of required testing and the reason(s) why a physician believes a medical emergency prevents compliance with the Act. *Id.* §§ 171.203(d), .205(b), (c).[6]

---

[6] In anticipation of the changing landscape regarding abortion, the Act specifically noted that it did "not create or recognize a right to abortion before a fetal heartbeat is detected." *Id.* § 171.206(a).  It also specified that it created no cause of action against a woman upon whom an abortion is performed, that it did not repeal "any other statute that regulates or prohibits abortion," and that it did not "restrict a political subdivision from regulating or prohibiting abortion in a manner that is at least as stringent as the laws of this state." *Id.* § 171.206(b).

21

**B.     We set forth the remedy that the Heartbeat Act provides for its violation.**

As we noted in the background section, the Act has a unique enforcement mechanism. The Act is explicit as to who may *not* seek to enforce it:

> Notwithstanding Section 171.005 or any other law, the requirements of this subchapter shall be enforced exclusively through the private civil actions described in Section 171.208. No enforcement of this subchapter, and no enforcement of Chapters 19 and 22, Penal Code, in response to violations of this subchapter, may be taken or threatened by this state, a political subdivision, a district or county attorney, or an executive or administrative officer or employee of this state or a political subdivision against any person, except as provided in Section 171.208.

*Id.* § 171.207(a). In a subsequent provision, the Act reinforces this prohibition by providing that "[n]otwithstanding any other law, this state, a state official, or a district or county attorney may not intervene in an action brought under this section." *Id.* § 171.208(h).

Next, the Act provides who may sue for its violation:

> (a) Any person, other than an officer or employee of a state or local governmental entity in this state, may bring a civil action against any person who:
>
> > (1) performs or induces an abortion in violation of this subchapter;
> >
> > (2) knowingly engages in conduct that aids or abets the performance or inducement of an abortion, including paying for or reimbursing the costs of an abortion through insurance or otherwise, if the abortion is performed or induced in violation of this subchapter, regardless of whether the person knew or should have known that the abortion would be performed or induced in violation of this subchapter; or

22

(3) intends to engage in the conduct described by Subdivision (1) or (2).

*Id.* § 171.208(a).

The person who brings a civil action may obtain injunctive relief; "statutory damages in an amount of not less than $10,000 for each abortion that the defendant performed or induced in violation of this subchapter, and for each abortion performed or induced in violation of this subchapter that the defendant aided or abetted"; and costs and attorney's fees. *Id.* § 171.208(b).

The Act then deals with various aspects of its enforcement and defenses to the liability it creates by providing as follows:

- A court may not award relief if a defendant has "previously paid the full amount of statutory damages under Subsection (b)(2) [of Section 171.208] in a previous action for that particular abortion performed or induced in violation of this subchapter, or for the particular conduct that aided or abetted an abortion performed or induced in violation of this subchapter." *Id.* § 171.208(c).

- "[A] person may bring an action under this section not later than the fourth anniversary of the date the cause of action accrues." *Id.* § 171.208(d).

- The Act enumerates a number of actions that "are not a defense to an action brought under this section," including

  o ignorance of the law;

  o belief the Act is unconstitutional;

  o reliance on an overruled court decision, even if the decision had not been overruled when the defendant engaged in conduct that violated the Act;

23

o    "reliance on any state or federal court decision that is not binding on the court in which the action has been brought";

o    "non-mutual issue preclusion or non-mutual claim preclusion";

o    "the consent of the unborn child's mother to the abortion"; and

o    "any claim that the enforcement of this subchapter or the imposition of civil liability against the defendant will violate the constitutional rights of third parties." *Id.* § 171.208(e)(1)–(7).

- The Act provides an affirmative defense, which must be proved by a preponderance of the evidence, if a person sued under the Act "reasonably believed, after conducting a reasonable investigation, that the physician performing or inducing the abortion had complied or would comply" with the Act. *Id.* § 171.208(f), (f–1).

- The Act prohibits the imposition of liability under the Act "on any speech or conduct protected by" the First Amendment to the United States Constitution and Article I, Section 8 of the Texas Constitution. *Id.* § 171.208(g).

- The Act prohibits an award to a defendant of attorney's fees under the Rules of Civil Procedure or a rule adopted by the Texas Supreme Court under its rule-making power. *Id.* § 171.208(i).

- The Act prohibits "a person who impregnated the abortion patient through an act of rape, sexual assault, incest, or any other act prohibited by Sections 22.011, 22.021, or 25.02, Penal Code" from bringing a civil action under the Act. *Id.* § 171.208(j).

The Act then controls the mechanics of if and how a person sued under the Act may have standing to assert an affirmative defense that the relief sought will impose an undue burden. *Id.* § 171.209(a)–(c). This defense was abrogated because this section of the Act goes on to state that the defense "is not available if the United States Supreme Court overrules *Roe v. Wade*, 410 U.S. 113 (1973)[,] or *Planned*

24

*Parenthood v. Casey*, 505 U.S. 833 (1992)." Tex. Health & Safety Code Ann. § 171.209(e). The section concludes, "Nothing in this section shall in any way limit or preclude a defendant from asserting the defendant's personal constitutional rights as a defense to liability" under the Act. *Id.* § 171.209(f).

> Proper venue of an action is specified to be as follows:
>
> (a) Notwithstanding any other law, including Section 15.002, Civil Practice and Remedies Code, a civil action brought under Section 171.208 shall be brought in:
>
> > (1) the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;
> >
> > (2) the county of residence for any one of the natural person defendants at the time the cause of action accrued;
> >
> > (3) the county of the principal office in this state of any one of the defendants that is not a natural person; or
> >
> > (4) the county of residence for the claimant if the claimant is a natural person residing in this state.
>
> (b) If a civil action is brought under Section 171.208 in any one of the venues described by Subsection (a), the action may not be transferred to a different venue without the written consent of all parties.

*Id.* § 171.210.

Next, the Act provides that it "prevails over any conflicting law, including[] (1) the Uniform Declaratory Judgments Act[ (UDJA)]; and (2) Chapter 37, Civil Practice and Remedies Code." *Id.* § 171.211(a). And the section containing this provision also preserves governmental immunity for "any action, claim, or counterclaim or any type of legal or equitable action that challenges the validity of any

25

provision or application of this chapter, on constitutional grounds or otherwise." *Id.* § 171.211(b).

Finally, the Act addresses severability to narrow the effect of a decision that finds a section of the Act is invalid or unconstitutional. *Id.* § 171.212.

Outside the provisions of the Act, the Civil Practice and Remedies Code expands the list of parties from whom attorney's fees may be recovered for a violation of the Act and other laws regulating abortion by providing that

> [n]otwithstanding any other law, any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, any governmental entity or public official in this state, or any person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts abortion or that limits taxpayer funding for individuals or entities that perform or promote abortions, in any state or federal court, or that represents any litigant seeking such relief in any state or federal court, is jointly and severally liable to pay the costs and attorney's fees of the prevailing party.

Tex. Civ. Prac. & Rem. Code Ann. § 30.022(a). That section permits the recovery of fees by a prevailing party if the case is dismissed "regardless of the reason for dismissal" or by judgment, provides an extension of the time to recover fees of three years after judgment or the time for appellate review for a prevailing party that did not seek to recover them in the underlying action, and limits the defenses that may be raised to the fee claim. *Id.* § 30.022(b), (c), (d).

## IV. Analysis

As part of its first issue, the Fund challenges whether the trial court properly granted Maxwell's Rule 91a Dismissal Motion. One basis for Maxwell's Rule 91a Dismissal Motion was that a declaratory-judgment action should not be used as a vehicle to deprive her of the ability to decide where and if she would file suit under the Act. The rule invoked by Maxwell has its origin in the Texas Supreme Court opinion in *Abor*, and for ease of reference, we will refer to the principle in question as the *Abor* rule. 695 S.W.2d at 566. Undoubtedly, the Fund's Declaratory-Judgment Petition preempted Maxwell's decision regarding whether she would file an action under the Act and, if so, where she would file it. The Fund, however, argues that no matter this effect, the *Abor* rule is of such limited application that it holds no sway. The fact remains that the Act accords the decision regarding where to file suit to Maxwell as a plaintiff who may invoke its remedy. Indeed, Maxwell averred that because of the flux in the legal status of abortion, she had not decided whether to file a suit against the Fund. Thus, as explained in more detail below, we conclude that the *Abor* rule provides protection to Maxwell's ability to control the destiny of her litigation decisions that should not be thwarted by the Fund's Declaratory-Judgment Petition. We conclude that the trial court was correct in concluding that the *Abor* rule warranted granting Maxwell's Rule 91a Dismissal Motion.

### A. We set forth the standard of review.

We recently set out the standard of review of a Rule 91a ruling as follows:

27

Rule 91a allows a party to move to dismiss a claim brought against it if the claim has "no basis in law or fact." Tex. R. Civ. P. 91a.1. "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." *Id.* "A cause of action has no basis in fact if no reasonable person could believe the facts pleaded." *Id.* We review the merits of a Rule 91a ruling de novo. *In re Farmers Tex. Cnty. Mut. Ins.*, 621 S.W.3d 261, 266 (Tex. 2021) (orig. proceeding).

*Quinn v. State Farm Lloyds*, No. 02-22-00191-CV, 2023 WL 3749932, at *9 (Tex. App.—Fort Worth June 1, 2023, no pet.) (mem. op.). The Texas Supreme Court has applied the *Abor* rule in the context of a Rule 91a motion to dismiss. *See In re Hous. Specialty Ins. Co.*, 569 S.W.3d 138, 140–41 (Tex. 2019) (per curiam) (orig. proceeding).

**B.     We set forth the types of cases to which the *Abor* rule applies and why we conclude that it should apply here.**

The supreme court has explained the rationale of the *Abor* rule, its opinions applying the rule, and an exception to it as follows:

> The issue [in *Abor*] was "whether a potential defendant in a negligence action can choose the time and forum for trial by beating the potential plaintiff to the courthouse and filing suit seeking a declaration of non-liability under [the UDJA]." . . . 695 S.W.2d at 565. After her daughter died from being injected with the wrong drug during a chemotherapy session, Abor filed a wrongful[-]death action in Harris County district court against the drug's manufacturer, the hospital where the injection occurred, and several hospital staff members. *Id.* The case was removed to federal court but then remanded for lack of diversity jurisdiction. *Id.* Before the case was redocketed in Harris County, the defendants filed a declaratory[-]judgment action in Bell County seeking a declaration of nonliability. *Id.* Abor filed a plea in abatement in the Bell County suit, arguing that the defendants' claims were improper under the UDJA. *Id.* The Bell County trial court denied the plea. *Id.*
>
> We stated that "[b]ecause [the UDJA] appears to give the courts jurisdiction over declarations of non-liability of a potential defendant in a

28

tort action, . . . the Bell County District Court had jurisdiction over the suit." *Id.* at 566. But we went on to hold—in no uncertain terms and consistent with the rule in other jurisdictions—"that the trial court should have declined to exercise such jurisdiction because it deprived the real plaintiff of the traditional right to choose the time and place of suit." *Id.*

Five years later, in *BHP Petroleum Co. v. Millard*, 800 S.W.2d 838 (Tex. 1990) (orig. proceeding), we commented on *Abor*'s significance, explaining that we had "eschewed use of a declaratory[-]judgment action to 'deprive the real plaintiff of the traditional right to [choose] the time and place of suit.'" *Id.* at 841 (quoting *Abor*, 695 S.W.2d at 566). In the years since, we have never recognized any exception or nuance to the rule that a potential tort defendant may not seek a declaration of nonliability in tort. *Cf. MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 668 (Tex. 2009) (declining to extend the rule of *Abor* to breach-of-contract cases and explaining that "[t]he 'real' plaintiff in a tort action is the injured party," whereas in a contract case, "each party [usually] claims the other breached").

*Id.* at 140.

On appeal, the Fund tries to cabin the rule of *Abor*, arguing that it applies only to a tort defendant's effort to use a declaratory-judgment action to obtain a declaration of non-liability in tort and noting that the supreme court itself has held that the rule does not apply in a contract action. As the Fund argues, "The language of four supreme court cases consistently limiting the rule to tort cases and the absence of any cases to the contrary is sufficient to establish" the limitation that it cannot apply to a "non-tort" case. But the Fund does not explain why the underlying principle of *Abor* has no application in this case.

29

First, a suit under the Act shares the central characteristic of a tort suit; it is a

suit for violation of a duty under the law.  As the Fifth Circuit noted, a tort action in

Texas is usually defined by the source that creates the duty at issue:

> Texas courts characterize actions as tort or contract by focusing on the source of liability and the nature of the plaintiff's loss:
>
>> As one prominent authority has explained[,] "Tort obligations are in general obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others."  If the defendant's conduct—such as negligently burning down a house— would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort.  Conversely, if the defendant's conduct—such as failing to publish an advertisement— would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.
>>
>> In determining whether the plaintiff may recover on a tort theory, it is also instructive to examine the nature of the plaintiff's loss.  When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract.
>
> *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 & n.2 (Tex. 1991) (citing W. Keeton et al., Prosser and Keeton on the Law of Torts § 92, at 655 (5th ed. 1984)); *see Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 45 (Tex. 1998) [(op. on reh'g)]; *Int'l Printing Pressmen & Assistants' Union of N. Am. v. Smith*, . . . 198 S.W.2d 729, 735 ([Tex.] 194[6]); *see also Hyundai Motor Co. v. Rodriguez ex rel. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999) ("Liability for personal injuries caused by a product's defective design can be imposed under several legal theories, among them negligence, breach of warranty, and strict products liability."); *Am. Nat'l Petroleum Co. v. Transcon[t'l] Gas Pipe Line Corp.*, 798 S.W.2d 274, 283 (Tex. 1990) ("[W]hether a purchaser may sue for breach of warranty or strict liability for a defective product

depends on whether the product merely did not perform as promised (contract) or whether it caused physical harm to person or property (tort).").  But of course, "[t]he difficulty in determining whether the action is in tort or in contract is in the application of the rule," *Int'l Printing Pressmen*, 198 S.W.2d at 735, and thus the process of characterization resists rigid categories in favor of an analysis that accounts for all of a claim's particular contours.

*Century Sur. Co. v. Hardscape Constr. Specialties, Inc.*, 578 F.3d 262, 267–68 (5th Cir. 2009).

The Fund's argument turns a blind eye to whether the *Abor* rule extends to protect a plaintiff's autonomy regarding whether and where to file a claim that has the earmarks of a tort claim.  The autonomy to decide whether and where to file suit is as clearly vested in a plaintiff's seeking to recover for a violation of the legal duty created by the Act as it is for the plaintiff in a tort suit.  Thus, we are unpersuaded by the Fund's argument that the application of the *Abor* rule to tort cases means that it has no application to the facts presented here.

Nor do the limitations that the Fund invokes and that the supreme court has placed on the *Abor* rule apply to the situation before us.  The *Abor* rule is not applied in contract cases because the nature of the cause of action makes it difficult to decide who should be accorded the status of the real plaintiff.  In *MBM Financial*, the Texas Supreme Court explained,

> [T]he "real plaintiff" and the "traditional right to choose the time and place of suit" are materially different in contract and tort cases.  The "real" plaintiff in a tort action is the injured party, yet both parties often suffer injury if a contract collapses.  When each party claims the other breached (as is usually the case), it is hard to say who ought to be the

31

"real" plaintiff. Here, for example, why should [appellant] get to choose the time and place of suit rather than [appellee]? The [UDJA] itself specifically contemplates declarations that are negative (non-liability) as well as affirmative (liability). And historically, declarations of non-liability under a contract have been among the most common suits filed under the [UDJA] . . . ."

292 S.W.3d at 668 (footnotes omitted). Though the Fund argues against the conclusion, there is no conceptual challenge in determining who the real plaintiff is in a Heartbeat Act suit. The legislature has made that status clear.

We are also not persuaded by the Fund's argument that attempts to turn the tables on Maxwell by arguing that in our context it is difficult to determine who the "real" plaintiff is and that the Fund, rather than Maxwell, should occupy that status:

> Maxwell argues that the essence of the *Abor* rule is to prevent an "effort to deprive the 'real plaintiff' of his traditional right to choose the time and place of suit." She also notes that "the 'real' party in a tort case is the injured party." But her inability to apply that logic to this situation demonstrates why *Abor* is limited to tort cases and has not been extended to cases where "it is difficult to determine who the 'real' plaintiff is." Here, . . . Maxwell has suffered no injury, and, therefore, can make no claim to the favored "real plaintiff" status, by her own test. Just because the drafters of SB8 took the unprecedented and unconstitutional step of allowing "any person" to sue to enforce SB8, that does not make that person an "injured party."

> On the other hand, if SB8 is unconstitutional, as at least two state[-]court judges and one federal judge have held, then [the Fund] will be injured by submitting to Rule 202 depositions, being sued, and possibly being subject to judgments in unlimited amounts. By . . . Maxwell's test, [the Fund] is, or will be, the injured party and is the "real plaintiff" in a suit challenging the constitutionality of SB8. Although SB8 creates several venue options for people suing to enforce SB8, [the Fund] did not sue to enforce SB8[] but to challenge its constitutionality. There is no reason why it, as the "real plaintiff" in that action, should be deprived of its right to choose where and when to sue by a Rule 202

petitioner who has not yet decided whether to file suit. [Briefing references and footnote omitted.]

Again, at this point, the Texas Legislature has made it clear who the "real" plaintiff is in a Heartbeat Act case and has also made it clear in its venue provision that such a plaintiff has the autonomy to decide where to file suit. Tex. Health & Safety Code Ann. § 171.210. The Fund may well have a defense to a suit, but the questions remain (1) why the *Abor* rule does not forestall the assertion of the defense until litigation is actually filed and (2) why a plaintiff invoking the Act should not have the ability to decide whether it wants to go to the expense of litigating the claims and, if so, to select the venue where it will be litigated.[7]

Also, as noted in the quote, the Fund argues that it should not have to wait for Maxwell's decisions because "if SB8 is unconstitutional, as at least two state[-]court judges and one federal judge have held, then [the Fund] will be injured by submitting to Rule 202 depositions, being sued, and possibly being subject to judgments in

---

[7]The Fund also argues that

Maxwell attempts to establish a link to *Abor* by inaccurately claiming that "[the] Fund is suing . . . Maxwell for a declaration of non-liability for past conduct." That is demonstrably false. [The Fund's] suit for declaratory and injunctive relief lists specific declarations that it is seeking. There is no requested declaration that [the Fund] is not liable for past conduct. In fact, neither "[the Fund]" nor any form of the word "liability" appears anywhere in the requested declarations. [Briefing and record references omitted.]

This is a distinction without a difference. The obvious effect of the Fund's Declaratory-Judgment Petition is to free it and others of liability under the Act.

33

unlimited amounts." [Footnote omitted.] Simply, the decision of the state district courts and the federal court are not definitive on the constitutionality of the Act, and it appears that much litigation is ahead on that question. Nor is there certainty that the parade of horribles that the Fund lists will come to pass. We do not know if the Fund will actually be sued by Maxwell or, should that possibility come to pass, how the court hearing that suit would resolve the Fund's claims that the Act is unconstitutional. Again, Maxwell may not want to take on the burden of responding to what she now knows will be the full-throated defense that the Fund will raise and the attendant expense and travail to herself of such a suit. And indeed, her calculus in whether to file suit may well be different in a post-*Dobbs* world than it was when Texas law was controlled by *Roe.* The *Abor* rule gives Maxwell the ability to make that choice. Further, though Maxwell has never sued anyone under the Act and has only sought to determine whether she might file suit, the Fund seeks to hold her liable for the attorney's fees it incurs for the prosecution of its Declaratory-Judgment Petition, whether its challenge is successful or not.[8]

Admittedly, Maxwell started the ball rolling by filing her 202 Proceeding but did not do so based on the venue provision of the Act; instead, she filed the petition in the county where the Fund's executive director claimed to reside. The Fund did

---

[8] In its petition, the Fund "specifically requests the recovery of reasonable attorneys' fees in advancing this action under Tex. Civ. Prac. & Rem. Code § 37.009." Section 37.009 provides that "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009.

not file a counterclaim in the 202 Proceeding, presumably because the rules that we cite below demonstrate that a Rule 202 proceeding cannot be a basis for substantive claims. Even so, the Fund is using that proceeding as the anchor for its substantive claims against Maxwell. The question is whether the filing of an ancillary proceeding that may never result in a lawsuit should subject Maxwell to the Fund's Declaratory-Judgment Petition, deprive her of the right to both decide whether to file a civil action under the Act and to exercise her broad choice of the venue where to file the action, and potentially make her liable for the fees incurred in litigating the Act's validity. We conclude that it should not.

For example, the Corpus Christi–Edinburg Court of Appeals dealt with whether an intervention could be filed to litigate substantive claims in a Rule 202 proceeding. *See Rodriguez v. Cantu*, 581 S.W.3d 859, 869 (Tex. App.—Corpus Christi–Edinburg 2019, orig. proceeding) ("Cantu has improperly attempted to use a pending Rule 202 proceeding to institute substantive claims for relief regarding the removal of an elected official from office."). To support its holding, the court in *Rodriguez* explained the limited purpose that a Rule 202 proceeding serves and how it does not place unfiled claims before the trial court:

> A Rule 202 proceeding "is not a separate independent lawsuit" but is instead "in aid of and incident to an anticipated suit." *Lee v. GST Transp. Sys., LP*, 334 S.W.3d 16, 19 (Tex. App.—Dallas 2008, pet. denied); *see Office Emps. Int'l Union Loc*[.] *277 v. Sw. Drug Corp.*, 391 S.W.2d 404, 406 (Tex. 1965) (interpreting the predecessor rule to Rule 202); *Combs*[ *v. Tex. Civil Rights Project*], 410 S.W.3d [529,] 534 [(Tex. App.—Austin 2013, pet. denied)] (concluding that a Rule 202 petition is not a "suit"); *see also*

35

*Patton Boggs LLP*[ *v. Moseley*], 394 S.W.3d [565,] 571 [(Tex. App.—Dallas 2011, no pet.)] (concluding that the trial court lacked jurisdiction to grant a motion to compel arbitration filed in a Rule 202 proceeding). Stated differently, a Rule 202 proceeding is an ancillary proceeding. *In re Wolfe*, 341 S.W.3d [932,] 932[ (Tex. 2011) (per curiam) (orig. proceeding)]. A Rule 202 petition "asserts no substantive claim or cause of action upon which relief can be granted." *Combs*, 410 S.W.3d at 534; *see Hughes v. Giammanco*, . . . 579 S.W.3d 672, 678–79 . . . (Tex. App.—Houston [1st Dist.] . . . , no pet.[), *judgment set aside without vacating op.*, 2019 WL 3331124 (Tex. App.—Houston [1st Dist.] July 25, 2019, no pet.) (mem. op.)]. Therefore, "a Rule 202 petition does not place unfiled claims before the trial court for adjudication on the merits." *Caress v. Fortier*, . . . 576 S.W.3d 778, 782 . . . (Tex. App.—Houston [1st Dist.] . . . 2019, [pet. denied]). Instead, a successful Rule 202 petitioner "simply acquires the right to obtain discovery—discovery that may or may not lead to a claim or cause of action" upon which relief can be granted. *Combs*, 410 S.W.3d at 534; *see Hughes*, 579 S.W.3d at 678–79 . . . .

*Id.* at 868–69; *see also In re ASICS Am. Corp.*, No. 05-22-00994-CV, 2023 WL 333711, at *5 (Tex. App.—Dallas Jan. 20, 2023, orig. proceeding) (mem. op.) (holding that an attempt to assert a substantive claim in an ancillary discovery proceeding is improper).[9]

---

[9] We acknowledge the split of authority regarding whether a Rule 202 proceeding is a legal action under the TCPA. The El Paso Court of Appeals recently summarized the split as follows:

The TCPA defines "legal action" as a "lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim[,] or any other judicial pleading or filing that requests legal or equitable relief." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(6). Because Rule 202 specifically states, "A person may petition the court for an order authorizing the taking of a deposition . . . ," it appears that a Rule 202 petition meets the plain-language definition of "legal action" established by the [Texas] Legislature in the TCPA. *See* Tex. R. Civ. P. 202.1; Tex. Civ. Prac. & Rem. Code Ann. § 27.001(6). Three intermediate courts of appeals in Texas have held a Rule 202 petition was a "legal action" subject to

possible dismissal under the TCPA. *See In re Krause Landscape Contractors, Inc.*, 595 S.W.3d 831, 836 (Tex. App.—Amarillo 2020, no pet.); *DeAngelis v. Protective Parents Coal*[.], 556 S.W.3d 836, 848–49 (Tex. App.—Fort Worth 2018, no pet.); *In re Elliott*, 504 S.W.3d 455, 463 (Tex. App.—Austin 2016, [orig. proceeding]). However, our two sister courts in Houston held otherwise, determining [that] "Rule 202 petition[s] do[ ] not assert a substantive claim or cause of action[]" and to require Rule 202 petitioners to present prima facie evidence of a claim which they hope to investigate via pre-suit deposition in order to survive a TCPA motion to dismiss "would render Rule 202 a nullity." *Hous*[.] *Tennis Assoc., Inc. v. Thibodeaux*, 602 S.W.3d 712, 718 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (citing *Hughes*, 579 S.W.3d at 685).

The Austin Court of Appeals undertook a thorough analysis of the applicability of the TCPA's definition of "legal action" to Rule 202 petitions in . . . *Elliott*, 504 S.W.3d at 464–65. We will not rehash their entire examination here. Suffice to say, in addition to the plain language of the statutory definition including "petition," which is the method described in the Rules of Civil Procedure for obtaining a pre-suit deposition, *see* Tex. R. Civ. P. 202.1, a Rule 202 petition seeks equitable relief. *See* [*Elliott*, 504 S.W.3d] at 464–65; *see also* . . . *Krause*, 595 S.W.3d at 836 (noting that Rule 202 petitions seek an equitable remedy and holding they, therefore, meet the TCPA definition of "legal action"). It therefore squarely falls within the statute's definition of "legal action." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(6) (definition of "legal action" includes a "petition . . . or any other judicial pleading or filing that requests legal or equitable relief[]"); *see* . . . *Elliott*, 504 S.W.3d at 464–65. We decline to follow the narrower definition adopted by our sister courts in Houston. *See Hous*[.] *Tennis*, 602 S.W.3d at 718 (limiting the TCPA definition of "legal action" to assertions of "substantive claim[s] or cause[s] of action"); *Hughes*, 579 S.W.3d at 685 (same).

We, therefore, hold Appellee's Rule 202 petition to depose Appellants is a "legal action" for purposes of determining applicability of the TCPA.

*Florez v. Olibas*, 657 S.W.3d 31, 38–39 (Tex. App.—El Paso 2022, pet. denied). As noted by a concurrence to that opinion, a TCPA motion directed at a Rule 202 petition is limited as follows:

Indeed, when it suits its argument, the Fund invokes the limited nature of a Rule 202 proceeding to argue that "a Rule 202 petition can result in nothing more than an order compelling a pre-suit deposition. It does not adjudicate claims, cannot result in a final judgment, has no preclusive effect, and is not considered a lawsuit." [Footnote omitted.] As noted, when the Fund attempted to use the 202 Proceeding to transfer this controversy to the MDL court, that court viewed the limited nature of the proceeding as not providing the basis for the transfer and concluded that Maxwell's 202 Proceeding was not an attempt to enforce the Act.

At bottom, we are dealing with a venue provision by which the legislature has not only specified the venue but has also specified that the plaintiff's choice of venue may not be overridden without the consent of all the parties. *See* Tex. Health & Safety Code Ann. § 171.210. We see no logical reason why the *Abor* rule would not as a general principle prevent the use of a declaratory-judgment action to deprive a plaintiff of the right to choose the time and place for bringing a civil action to enforce

---

> As our decision makes clear, the "essential elements of the claim" are not the elements of the potential legal action that the Rule 202 movant proposes to investigate. Otherwise, the TCPA would require the rather absurd result that a party must have clear and specific evidence for a claim that they may never file. At the Rule 202 stage, the movant is only investigating whether they do have a basis in fact to bring a claim. So, the "essential elements of the claim" in this context would be limited to the predicates for a Rule 202 action.

*Id.* at 44 (Alley, J., concurring). Thus, the fact that a Rule 202 petition may prompt a TCPA motion to dismiss does not alter the rule that such a petition does not put substantive claims before the court.

38

the legal duty created by the Act. Maxwell did file her 202 Proceeding, but such a proceeding is not an anchor for substantive claims. Contrary to that rule, the Fund is using that proceeding as the anchor for its substantive claims. Indeed, the trial court has not ruled regarding whether Maxwell will be permitted to take the deposition that she sought in the 202 Proceeding. A host of contingencies stand between the current state of affairs and the filing of a suit against the Fund under the Act or even having its executive director sit for a deposition. We conclude that the rationale of the *Abor* rule forestalls the burden placed on Maxwell by way of the Fund's Declaratory-Judgment Petition—a burden that she may or may not assume by going forward with a suit under the Act.

We hold that the trial court properly granted Maxwell's Rule 91a[10] Dismissal Motion and overrule the portion of the Fund's first issue challenging that ruling.[11]

---

[10]Our holding that the Fund's declaratory-judgment suit was properly dismissed obviates the need to discuss the Fund's request for a temporary and anti-suit injunction. The Fund describes its request for injunctive relief as ancillary to its Declaratory-Judgment Petition: "Its request for injunctive relief prohibiting . . . Maxwell from enforcing SB8 is 'ancillary,' as it is based on the declaratory[-]judgment claim." The Fund also states, "The anti-suit injunction that [the] Fund seeks is ancillary to its request for a prospective temporary injunction prohibiting . . . Maxwell from enforcing SB8 against it." Thus, the request for injunctive relief stands on the shoulders of the underlying claim and falls when the underlying claim falls. *See Frey v. DeCordova Bend Ests. Owners Ass'n*, 632 S.W.2d 877, 881 (Tex. App.—Fort Worth 1982) (holding that in order to be entitled to injunctive relief, an applicant must demonstrate "the existence of a wrongful act," and "[w]ithout unlawful conduct or proof of intent to commit such conduct, any remedy is improper"), *aff'd*, 647 S.W.2d 246 (Tex. 1983).

## V. Conclusion

Having overruled the portion of the Fund's first issue challenging the trial court's granting of Maxwell's Dismissal Motion and denying discovery under the TCPA and having overruled the Fund's second issue challenging the trial court's fee award to Maxwell, we affirm the trial court's "Order Awarding Defendant Attorneys' Fees Under the Texas Citizens Participation Act and Rule 91a of the Texas Rules of Civil Procedure," which was signed on August 16, 2022; which was entered and recorded on August 17, 2022; and which was initially referenced in the trial court's order signed August 11, 2022.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: February 29, 2024

---

Further, the Fund's argument that the 202 Proceeding is moot feels contradictory. The Fund argues that the 202 Proceeding triggers its ability to subject Maxwell to its Declaratory-Judgment Petition but then argues that the proceeding has evaporated. But whether now moot or not, we remain unconvinced that the 202 Proceeding deprives Maxwell of the autonomy to decide whether she would file an SB 8 suit and, if so, where.

[11]This resolution obviates the need to discuss the arguments raised by the Fund in its first issue challenging the basis for the order granting dismissal under the TCPA. It also obviates the need to address the Fund's argument under its first issue that it was entitled to take Maxwell's deposition under the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(b). The Fund argues under its second issue that the trial court erred by granting Maxwell fees and by denying it a fee award because the trial court should not have granted Maxwell's Rule 91a Dismissal Motion. We disagree and thus overrule the Fund's second issue.

40